**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

DEMARIS L.B.,[1]
      Plaintiff,

          v.                                       Civil No. 3:21-cv-00106 (REP)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
      Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act ("Act"). At the time of her application date, Plaintiff was fifty-two-years-old with a master's degree and previously worked as a government labeling specialist and special education teacher. (R. at 185, 311-313, 1056.) Plaintiff alleges she is unable to work due to a traumatic brain injury. (R. at 312.)

On November 12, 2020, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 7.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ's decision is not supported by substantial evidence. (Pl.'s Mem. Supp. Mot. Summ. J. 1, ECF No. 21 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment or in the Alternative, Motion to Remand (ECF No. 20) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 22) ("Def.'s Mem,") be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on November 13, 2018, alleging disability beginning October 9, 2017 and ending July 2018. (R. at 185.) The Social Security Administration ("SSA") denied Plaintiff's claim on August 23, 2019 (R. at 118) and again upon reconsideration on April 2, 2020. (R. at 129.) Plaintiff requested a hearing before an ALJ, and a hearing was held telephonically on September 30, 2020. (R. at 32-63, 132-33.) On November 12, 2020, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 10-20.) Plaintiff requested review of the ALJ's decision, and on January 19, 2021, the SSA Appeals Council denied the request rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial

---

restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current

work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 12-20.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 9, 2017. (R. at 12.) At step two, the ALJ determined that Plaintiff's traumatic brain injury and neurocognitive disorder were severe impairments pursuant to 20 C.F.R. § 404.1520c and Social Security Ruling 85-28. (R. at 12.) At step three, the

ALJ determined that neither of these impairments, individually or in combination, met or equaled

a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 14.) Based on the

evidence in the record, the ALJ determined that Plaintiff retained the ability

> [T]o perform a full range of work at all exertional levels but with the following non-exertional limitations: She can never climb ladders, ropes or scaffolds. She cannot tolerate concentrated exposure to wetness (slick surfaces) and hazards, including unprotected heights. She cannot tolerate exposure to very bright lights in work environment, such as those found at hospitals. She can tolerate no more than moderate noise levels, such as office level noise. She cannot work in an environment where there are sudden, very loud noises, such as those that occur at a construction site or in a manufacturing environment with loud moving machinery. She can remember and carry out short and simple instructions consistent with unskilled work for 2-hour periods to complete an 8-hour workday. She can perform simple tasks in a low stress work environment, where there are no strict production quotas or assembly line-pace work. She can adjust to changes in the work setting that occur occasionally or are gradually introduced.

(R. at 14.)

The ALJ explained that she determined Plaintiff's residual functional capacity after

considering "all symptoms and the extent to which these symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence," in accordance with the

regulations. (R. at 15.) Based on her residual functional capacity findings, the ALJ concluded at

step four that Plaintiff was not capable of performing past relevant work as a customer service

representative, labeling specialist, or special education teacher. (R. at 18.) She explained that when

comparing the physical and mental demands of Plaintiff's past work and her residual functional

capacity, Plaintiff would be unable to perform the past work as it was actually or generally

performed. (R. at 18.)

5

At step five, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 19.) The ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of occupations such as marker, router, or counter supply worker (R. at 19.) Therefore, the ALJ determined that Plaintiff is not disabled under the Act. (R. at 19-20.)

## IV. ANALYSIS

Plaintiff argues that the ALJ's decision must be remanded because it is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ's residual functional capacity assessment is flawed because her assessment "disregards" the medical opinions of her treating neurologist, Richard Zorowitz, M.D. ("Dr. Zorowitz"), and a Consultative Examiner, Therese May, Ph.D. ("Dr. May"). (Pl.'s Mem. at 1, 14.) Defendant responds that the ALJ crafted Plaintiff's residual functional capacity in accordance with the regulations, which do not require the ALJ to rely on any medical opinion when evaluating Plaintiff's claim. (Def.'s Mem. at 17-26.) For the reasons that follow, this Court finds that the ALJ did not err in her findings.

### A. The ALJ Did Not Err When Evaluating the Medical Opinion Evidence.

Plaintiff argues that the ALJ erred in rejecting the medical opinions of Dr. Zorowitz and Dr. May. (Pl.'s Mem. at 12-14.) As a result, Plaintiff contends that the ALJ's residual functional capacity is not supported by substantial evidence because it was not based on a medical opinion. (Pl.'s Mem. at 1, 14.) Defendant responds that substantial evidence supports the ALJ's weighing of the opinion evidence, because the medical opinions were not supported by the record and were inconsistent with the other evidence in the record. (Def.'s Mem. at 17-25.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would

6

significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1520c, 416.912, 416.927. When the record contains several medical opinions, the ALJ will not assign any weight, or defer to an opinion, but instead will articulate the opinion's persuasiveness. § 404.1520c(a).

Historically, for claims filed before March 27, 2017, the ALJ gave a treating medical source's opinion controlling weight, if medically acceptable clinical and laboratory diagnostic techniques supported it and it comported with other substantial evidence in the record. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; SSR 96-2p, 1996 SSR LEXIS 9. For claims filed on or after March 27, 2017, revised regulations define what constitutes a medical opinion and how the medical opinions are evaluated. 20 C.F.R. §§ 404.1513(a)(2), 404.1520c, 416.913(a)(2); *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384 n.8 (4th Cir. 2021). Here, Plaintiff filed for disability insurance benefits after March 27, 2017, and, therefore, the revised regulations apply. (R. at 185.)

The revised regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform physical, mental, or other demands of work activity or adapt to environmental conditions. § 404.1513(a)(2). According to the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." § 404.1520c(a).

7

Moreover, when the ALJ articulates the consideration of a medical source, she need not individually discuss the consideration of each medical opinion from a single medical source. § 404.1520c(b)(1). Rather, when a medical source provides multiple medical opinions, the ALJ will articulate the persuasiveness of those medical opinions together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5), as appropriate. § 404.1520c(b)(1). These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c). Among the aforementioned factors, supportability and consistency carry the greatest import. § 404.1520c(b)(2). Importantly, when presented with multiple medical opinions from a medical source, the ALJ need not discuss each factor in determining the persuasiveness of a medical source, but only how she considered the supportability and consistency of a medical source's medical opinions, in relation to the other objective medical evidence. § 404.1520c(b)(2).

### 1. Dr. Zorowitz's Opinions.

Dr. Zorowitz is a rehabilitation specialist and has treated Plaintiff every two to three months since December 12, 2017. (R. at 1299-1303.) With regards to Dr. Zorowitz, Plaintiff alleges: (1) the ALJ failed to address the work restrictions requested by Dr. Zorowitz in his letter, dated August 21 2018 letter (the "August 2018 Letter"); and (2) substantial evidence does not support the ALJ's assessment of Dr. Zorowitz's medical opinion from May 2020. (Pl.'s Mem. at 12.) Defendant argues that the August 2018 Letter is not relevant because the ALJ determined Plaintiff could not perform her past work, and substantial evidence supports the ALJ's assessment of Dr. Zorowitz's opinion from May 2020. (Def.'s Mem. at 21.)

### a. The August 2018 Letter.

Dr. Zorowitz wrote the August 2018 Letter to Plaintiff's employer discussing Plaintiff's impairments and opining on their impact on her ability to perform her job at that time. (R. at 1025.) In the August 2018 Letter, "Dr. Zorowitz opined that [Plaintiff] could return to work with significant accommodations." (Pl.'s Memo. at 4.)

Plaintiff argues that it was "significant error" for the ALJ not to consider the August 2018 Letter, which encompassed "his clinical examinations and 'a comprehensive neuropsychological evaluation on April 17, 2018, that demonstrated reduced verbal reasoning, psychomotor speed, and mental flexibility, as well as difficulties in attention, verbal fluency, learning, and memory.'" (Pl.'s Mem. at 12, quoting R. at 1025.) Defendant argues that since the ALJ found Plaintiff could not perform her past relevant work, Dr. Zorowitz's opinion on that issue is "not relevant." (Def.'s Mem. at 21.) Additionally, Defendant points out that "Dr. Zorowitz's treatment records reflect improvement in Plaintiff's condition since he drafted [the August 2018 Letter]." (Def.'s Mem. at 21.)

The August 2018 Letter also opined that Plaintiff's "symptoms may cause frustration and irritability that may impact her quality of life and exacerbate cognitive difficulties." (R. at 1025.) Dr. Zorowitz noted that Plaintiff "continues to work with an athletic trainer" in accordance with his treatment plan, which also included a home exercise program and a continued medication regimen for her headaches. (R. at 1025.) Dr. Zorowitz explained that Plaintiff has symptoms from her traumatic brain injury that "impact her job performance" such as difficulties with memory and attention, tension and pressure within and outside her job, and absenteeism. (R. at 1025-26.) As a result, Dr. Zorowitz recommended accommodations that would allow Plaintiff to work part-time

with a reduced workload and extended deadlines in a quiet environment and with the ability to audio record meetings and use line reader software. (R. at 1026.)

Notably, the ALJ addressed the August 2018 Letter in her decision, explaining that "[O]ne of the claimant's doctors" (i.e. Dr. Zorowitz) wrote in April 2018[3] that "the claimant would be able to work part-time, but that she would need more time to complete tasks initially and a quiet work environment." (R. at 15, citing R. at 1025-27.) Nonetheless, Plaintiff argues the ALJ did not address these work restrictions and argues this was "a significant error." (Pl.'s Mem. at 12.) Plaintiff's "conclusory remark" is insufficient to allege with requisite specificity why this was legal error, and he "fails to develop this argument to any extent in [his] brief." (Pl.'s Mem. at 12); *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012). *See also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006) (finding that Plaintiff's single sentence alleging district court error was a "conclusory remark" that was "insufficient to raise on appeal any merits-based challenge to the district court's ruling.")

To the extent Plaintiff's brief alleges the ALJ erroneously failed to "address the work restrictions" detailed in the August 2018 Letter, it could establish no grounds for reversal or remand, because (as documented above) the ALJ ruled in Plaintiff's favor at step four by concluding that she could not return to her past relevant work. *See supra* Section III. Moreover, Plaintiff fails to develop any argument regarding error at this step, or in the ALJ's assessment of the August 2018 Letter in her decision. Therefore, the undersigned finds that review of this issue is precluded by Plaintiff's failure to develop this argument in her brief. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *see also Nickelson v. Astrue*, No. 1:07CV783, 2009 U.S.

---

[3] As previously discussed, the August 2018 Letter was based on Dr. Zorowitz's clinical examinations and a neuropsychological evaluation conducted on April 17, 2018. (Pl.'s Mem. at 12.)

Dist. LEXIS 67355, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the court will not address them.").

b.       **Dr. Zorowitz's May 1, 2020 Medical Source Statement.**

Dr. Zorowitz completed a headache medical source statement on May 1, 2020, in which he provided his medical opinion about Plaintiff's ability to do work related activities. (R. at 1299-1303.) In this assessment, Dr. Zorowitz discussed Plaintiff's traumatic subarachnoid hemorrhage, post-traumatic headaches, and minimally displaced orbital fracture, which he estimated had been ongoing conditions since October 9, 2017. (R. at 1303.) He opined that Plaintiff has post-concussion syndrome and experiences visual disturbances in addition to dysphonia at a moderate intensity (about two or three times per week), each lasting three to four hours. (R. at 1299.) He explained that Plaintiff's history of a head injury and anxiety "could reasonably be expected to explain [Plaintiff's] headaches" and that prolonged visual or cognitive strain, as well as lack of sleep, can trigger them. (R. at 1300.) According to Dr. Zorowitz, bright lights and noise make her headaches worse, but lying down, being in a quiet place or a dark room, and taking medication can make them better. (R. at 1300.) He denied that emotional factors contributed to Plaintiff's headaches, and opined, without further explanation, that she was "[i]ncapable of even 'low stress' work.'" (R. at 1300.)

Dr. Zorowitz explained that Plaintiff's treatment and response consisted of visual rehabilitation with prism glasses, medication, and vitamin supplementation. (R. at 1301.) While he identified no side effects of her medications, Dr. Zorowitz concluded that Plaintiff's prognosis was guarded. (R. at 1301.) Dr. Zorowitz answered affirmatively when asked if Plaintiff's impairments lasted or can be expected to last twelve months, adding "[s]ince 10/09/2017," and opined, without explanation, that Plaintiff would be precluded from performing even basic work

activities and she would need a break from the workplace during a headache. (R. at 1301.) Dr. Zorowitz estimated that Plaintiff would need to take unscheduled breaks every hour for five to ten minutes during a working day, when she would need to "sit quietly". (R. at 1301.) Not counting breaks, Dr. Zorowitz estimated that Plaintiff would likely be "off task" while at work for twenty-five percent or more of the time. (R. at 1301.) Noting that Plaintiff's impairments would likely produce both "good days" and "bad days," Dr. Zorowitz estimated that, on average, Plaintiff would be absent from work more than four days per month as a result of her headaches. (R. at 1301.) Finally, Dr. Zorowitz concluded that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations as described, but he declined to describe other limitations that would affect Plaintiff's ability to work on a sustained basis. (R. at 1301-02.)

The ALJ found Dr. Zorowitz's opinion not persuasive, in part, because it was not supported by Dr. Zorowitz's own treatment notes. (R. at 17.) The ALJ noted specifically that Dr. Zorowitz "chose the most severe limitation in response to every question where he was presented options," when "the treatment notes, from him and the claimant's other providers, do not suggest such severe difficulties." (R. at 17.) For example, Dr. Zorowitz's treatment notes demonstrate that Plaintiff had mild to no balance issues and that her memory was grossly intact. (R. at 1480, 1483, 1486, 1489, 1492, 1498, 1501-02, *passim*.) The ALJ also found that Dr. Zorowitz's opinions were not consistent with the rest of the medical record, explaining that "[w]hile there is some evidence of memory and balance loss, neither is as severe as Dr. Zorowitz's opinion would indicate, and the claimant instead maintained normal functioning in most areas." (R. at 17.)

The ALJ could properly discredit Dr. Zorowitz's opinions for lack of support if his own treatment notes do not support his findings. *See Stanley v. Astrue*, No. 2:06cv61, 2007 WL 4224734, at *7 (W.D. Va. Nov. 28, 2007) ("[B]ecause Dr. Spangler's opinion was not supported

by his own findings, the ALJ correctly afforded it less weight." ); *Mary R. v. Saul*, No. 3:19cv903, 2021 WL 388463, at *6 (E.D. Va. Jan. 19, 2021) (finding that an ALJ adequately addressed the supportability factor when the ALJ found that a medical provider's opinion "was less supported because [the provider] found extreme limitations even though he observed [the plaintiff] to be cooperative with good eye contact"). A review of the treatment notes shows the ALJ could reasonably conclude that Dr. Zorowitz's medical opinion findings do not support the extreme limitations in his medical opinions.

The ALJ also found that Dr. Zorowitz's opinion conflicted with Plaintiff's other providers notes that did not suggest Plaintiff's difficulties were as severe. (R. at 17.) For example, at Plaintiff's physical therapy appointment with Lindsey Greenwald, PT, DPT, Plaintiff reported she had not had further dizziness or headaches. (R. at 816.) Further, her doctor advised Plaintiff to "continue Tylenol for intermittent headache[s]," which Plaintiff reported were well-controlled. (R. at 927.) This, in addition to the evaluation of Dr. Zorowitz's treatment notes and the objective medical evidence, shows that the ALJ sufficiently addressed the supportability and consistency of Dr. Zorowitz's medical opinion. Therefore, the Court finds the ALJ did not err.

### 2. Dr. May's Opinions.

The ALJ also considered the opinions of Dr. May, who was hired by disability determination services to evaluate Plaintiff on August 19, 2019. (R. at 15-16, 1259-63.) Dr. May administered a clinical interview, a mental status exam, the Wechsler Adult Intelligence Scale (WAIS-IV), and the Wechsler Memory Scale-IV. (R. at 1259.) Dr. May's mental status exam showed that Plaintiff was alert and oriented to person, place, and date, and she presented with a neat appearance. (R. at 1260.) Plaintiff's thought processes were notably logical and goal-directed, and her attention and concentration were intact. (R. at 1260.) Her fund of information was above

average, but her abstract thinking tested in the low average range. (R. at 1260.) Plaintiff scored in the low average range of intellectual functioning, which Dr. May believed to be a representation of "deterioration in estimated premorbid functioning in the average to high average range." (R. at 1260-61.) Plaintiff relayed no significant difficulties with mood, sleep, or appetite, and denied symptoms of anxiety and depression. (R. at 1261.)

In her clinical interview, Dr. May observed Plaintiff to be a calm and pleasant person who got along with others and had a number of friends. (R. at 1261.) Recently retired, Plaintiff told Dr. May that she goes on walks with her husband, takes a shower independently, regularly cooks, but does not clean due to having a housekeeper. (R. at 1261.) Her hobbies included playing cards, watching television, and reading, the latter being difficult if the material is longer than a short article. (R. at 1261.) She also reported having her driver's license and driving short distances. (R. at 1261.) She believed her motivation was "very good," and told Dr. May that she "would like to find volunteer work, visit her grandchildren in Georgia and [] stated she and her husband plan to go back to Italy to finish the vacation that was interrupted by her accident." (R. at 1261.)

The Wechsler Adult Intelligence Scale showed Plaintiff to be in the fifty-eighth percentile of peers her age for verbal comprehension, the twenty-fifth percentile for perceptual reasoning, the ninth percentile for working memory, the thirty-fourth percentile for processing speed, and thirtieth percentile for full-scale IQ. (R. at 1262.) The Wechsler Memory Scale-IV testing suggested Plaintiff had a mild to moderate impairment in memory functions, particularly with visual reproductions, but was relatively strong in auditory memory. (R. at 1262.) When she conducted the mental status exam, she found Plaintiff's attention and concentration were intact and in the average range of intellectual functioning. (R. at 1260-61.)

14

After administering these tests, Dr. May completed a mental source statement, in which she determined Plaintiff:

> [Has] the cognitive capacity to understand simple and repetitive and some detailed or complex tasks. She is seen as able to perform simple repetitive tasks for short periods and with breaks. Detailed or complex tasks would be outside her cognitive range. Her double vision, memory, and cognitive issues would negatively affect her ability to maintain attendance to perform consistently in the work place. She would not require special supervision for most tasks. There is no evidence she cannot accept instructions from supervisors. Her ability to interact with supervisors, coworkers, and the public is intact. She maintains social skills, although she becomes easily fatigued. She is seen as likely to decompensate under the stresses of competitive work.

(R. at 1262-62.) Dr. May explained that Plaintiff had a "stable" prognosis, although she presented with "significant and pervasive declines in functioning. She was working full-time at a high skill job and currently has difficulty with driving long distances, memory and exertion secondary to a traumatic brain injury." (R. at 1263.) She concluded that Plaintiff "requires assistance with long-term driving and activities requiring exertion. Her husband is assisting her with managing funds." (R. at 1263.)

After reviewing Dr. May's opinion, the ALJ found it not persuasive. (R. at 16.) The ALJ acknowledged that while the "*specific* limitations found by Dr. May (regarding complex tasks) are generally consistent with the evidence[,] . . . [h]er remaining findings are too vague to be of any particular value, in that they do not actually say how much the claimant can or cannot do." (R. at 16.) The ALJ found that Dr. May's opinions "relied significantly on the claimant's subjective reports, rather than her own observations," and that Dr. May "did not adequately support her findings, since she did not explain why she considered some evidence more than others, in particular in terms of the claimant's allegations when they conflicted with what she observed." (R. at 16.)

The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). An opinion which is vague precludes the ALJ from articulating how a limitation would be supported by and consistent in the record. *See Angela C. v. Comm'r, Soc. Sec.*, No. SAG-20-3069, 2021 U.S. Dist. LEXIS 215558, at *5-6 (D. Md. Nov. 4, 2021). A medical opinion does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." Id. § 404.1513(a)(3) 416.913(a)(3) (defining these categories of information as "other medical evidence").

With these definitions in mind, the Court turns to Dr. May's August 2019 evaluation. Many of her findings do not appear to reflect medical opinions because they simply memorialize what Plaintiff told her. (*See* R. at 1260 (noting Plaintiff's complaints of having "difficulty with memory and attention, and inability to multitask which required her to retire from her job" as well as "double vision, headaches and word-finding problems.").) They also appear to be judgments about the nature and severity of Plaintiff's impairments. (*See* R. at 1262 ("Her double vision, memory, and cognitive issues would negatively affect her ability to maintain attendance to perform consistently in the work place.").) Although Dr. May's diagnostic impression was that Plaintiff suffered from a neurocognitive disorder, Dr. May failed to explain how Plaintiff's impairments would affect her ability to perform the mental demands of work activities. These types of notes reflect judgments about the nature and severity of Plaintiff's impairments, her prognosis, and clinical findings, but do not specify exactly what Plaintiff can or cannot do. Indeed, even though Dr. May found that Plaintiff has double vision, memory, and cognitive issues that would negatively affect her ability to work, but she did not explain to what extent. (R. at 16.)

Therefore, the ALJ was not unreasonable in finding that Dr. May's opinions were vague regarding what Plaintiff can or cannot do because of her impairments. Accordingly, the court finds that the ALJ adequately assessed Dr. May's opinion using the supportability and consistency factors explained above, and sufficiently articulated her reasoning for finding Dr. May's opinion not persuasive.

**B.   The ALJ Did Not Err in crafting the residual functional capacity when she found Dr. Zorowitz and Dr. May unpersuasive.**

Plaintiff argues that the ALJ failed to support her residual functional capacity assessment when she found the medical opinions not persuasive. (Pl.'s Mem. at 1.) Specifically, Plaintiff argues that the ALJ did not have sufficient evidence to formulate an opinion as to Plaintiff's residual functional capacity since she did not rely on the medical opinion evidence. (Pl.'s Mem. at 14.) While not fully developed in her brief beyond a paragraph header and a single sentence, the crux of Plaintiff's argument is that since the ALJ was not persuaded by the opinions of Dr. Zorowitz, Dr. May, Plaintiff's primary care physician and the non-examining state agency consultants, the ALJ's residual functional capacity lacks substantial evidence. (Pl.'s Mem. at 14.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1520c, 416.912, 416.927. When the record contains several medical opinions, the ALJ will not assign any weight, or defer to an opinion, but instead articulate the opinion's persuasiveness. § 404.1520c(a).

Under the regulations promulgated for claims filed after March 27, 2017, an ALJ need not "defer . . . to any medical opinion." 20 C.F.R. §§404.1520c(a), 416.920c(a). The agency requires the ALJ to use a "reasonable articulation standard" that "does not require written analysis about how [the ALJ] considered each piece of evidence." 82 Fed. Reg. 5844-01, at 5858. An ALJ has the discretion to seek additional or clarifying information if the information already in her possession is insufficient to determine whether the claimant is disabled or not. 20 C.F.R. §§ 404.1520b(b)(2)(i), 416.920b(b)(2)(i); *see e.g.,* 20 C.F. R. §§ 404.1520b(b)(1), 416.920b(b)(1) ("If any of the evidence in your case record, including an medical opinion(s) . . . . is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have."

In this case, the ALJ found, based on the entirety of the evidence presented, that state agency consultants Dr. William Rutherford Jr. and Dr. Jack Hutcheson did not adequately consider all of Plaintiff's limitations. (R. at 16.) The ALJ reasoned that their opinions did not consider or account for Plaintiff's sensitivity to noise. (R. at 16.) The ALJ also found the primary care physician's determination that Plaintiff could only perform sedentary work unsupported by the record, and that his limitations were inconsistent with Plaintiff's stated activities. (R. at 17.) Therefore, the ALJ sufficiently articulated why these opinions were not persuasive in accordance with the regulations.

Moreover, in her narrative discussion, the ALJ described how the evidence regarding Plaintiff's traumatic brain injury, neurocognitive disorder, and other limitations, supported the non-exertional limitations articulated in the residual functional capacity. (R. at 13-18.) The ALJ discussed Plaintiff's medical records, which indicated that Plaintiff reported difficulties with cognitive functioning, but that these difficulties had "improved a great deal by the end of the year."

18

(R. at 15.) She also discussed the nonmedical evidence, such as Plaintiff's ability to drive, prepare meals, manage her own medical care, and manage funds. (R. at 13-14.) She supplemented that with Plaintiff's ability to read, watch television, prepare meals, walk several miles per week, and do volunteer work. (R. at 13-17.) *See generally* Titles II and XVI: Assessing Residual Functional Capacity In Initial Claims, SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) (a residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").  In doing so, the ALJ sufficiently identified the evidence that supported her findings and built an accurate and logical bridge from that evidence to her conclusion that Plaintiff can perform a full range of work with the non-exertional limitations identified within the residual functional capacity. (R. at 13-17.)

In her prayer for relief, Plaintiff asks this court to "find the opinions of these providers . . . persuasive and to reverse the defendant's denial of benefits." (Pl.'s Mem. at 14.) However, it is not within the province of this Court to re-weigh evidence or find substantial evidence supporting a finding contrary to the Commissioner's. *See e.g., Estep v. Richardson*, 459 F.2d 1015, 1016-17 (4th Cir. 1972) ("The Secretary's decision, if supported by substantial evidence must be affirmed even though the reviewing court believes that substantial evidence also supports a contrary result."). In this case, the ALJ carefully considered the entire range of medical evidence. *Craig v. Chater*, 76 F.3d at 594-95; SSR 16-3p, 2016 SSR LEXIS 4 at *6, 2016 WL 1119029, at *2 (Mar. 16, 2016); see also SSR 96-8p, 1996 SSR LEXIS 5 at *13, 1996 WL 374184, at *5 (July 2, 1996) (The residual functional capacity "assessment must be based on all of the relevant evidence in the case record."). It is not this Court's function to: (1) conduct a blank slate review of the evidence; (2) undertake to reweigh conflicting evidence; (3) make credibility determinations; or (4)

substitute its judgment for that of the Commissioner. *Smith* 795 F.2d at 345; *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson*, 434 F.3d at 653. Therefore, Plaintiff's challenge to the ALJ's residual functional capacity based on the ALJ's assessment of the medical opinion evidence is unavailing.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 20) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 22) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

20

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: June 9, 2022